UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00188-RJC-DSC

| | |
|---|---|
| **RONALD BARRANCO and PRINT3D CORPORATION,** ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | **ORDER** |
| **3D SYSTEMS CORPORATION, 3D SYSTEMS, INC. DAMON GREGOIRE, JOHN DOES 1–10, JANE DOES 1–10, and DOE ENTITIES 1–10,** ) ) ) ) ) | |
| Defendants. ) ) | |

**THIS MATTER** comes before the Court on Plaintiff Ronald Barranco's ("Barranco" or "Plaintiff") Motion to Confirm Arbitration Award and for Judgment, (Doc. No. 58); Defendants 3D Systems, Inc. and 3D Systems Corporation's (collectively, "3D Systems" or "3D")[1] Motion to Vacate or Modify Arbitration Award, (Doc. No. 64); and the associated memoranda, declarations, and exhibits, (Doc. Nos. 59 to 59-3, 60, 65 to 65-19, 66, 69, 70, 71 to 71-13, 72 to 72-2, 73 to 73-4, 75 to 75-1, and 76).

**I. BACKGROUND**

3D Systems is a provider of 3D content-to-print solutions, and it produces 3D printers, integrated print materials, and on-demand custom parts services for professionals and consumers. Print3D was a startup company co-owned by Barranco and his business partner Deelip Menezes

---

[1] Although Damon Gregoire is still listed in the caption of this action as a defendant, he was voluntarily dismissed from the underlying arbitration proceeding, and Plaintiff seeks a judgment only against 3D Systems Corporation and 3D Systems, Inc.

("Menezes") that had developed software that allows users to determine the production cost of three-dimensional parts.

In April 2011, Barranco and Menezes sold Print3D to 3D Systems. At the time of the purchase, the Print3D software had been developed, but it had not been commercially launched. The parties executed an Acquisition Agreement (the "Agreement"), whereby 3D Systems paid Barranco and Menezes $1,000,000 at closing with earn-outs to be paid for three years thereafter if certain revenue and operating income thresholds were satisfied.[2] (Doc. No. 65-5: "Agreement"). The Agreement set forth an earn-out formula that would pay earn outs to be split equally between Barranco and Menezes.[3] (Agreement at 3–4, § 2(c)). Revenues from the Print3D division never satisfied the conditions precedent for triggering an earn-out payment; therefore, no earn-out payments were paid beyond the $1,000,000 paid to Barranco and Menezes upon the closing of the acquisition.

The Agreement also contained a section requiring that Barranco and Menezes be employed by 3D as "managers" of 3D Systems' Print3D business. (Agreement at 10, § 3(b)(vi)). After selling Print3D to 3D Systems, both Barranco and Menezes were employed by 3D Systems and given the title of manager. Menezes eventually became the Managing Director of 3D Systems India, and it appears that he still holds that position.[4] However, 3D Systems terminated Barranco's employment without explanation in February 2013. (Doc. No. 65-2 at 6).

---

[2] The total amount of earn outs contemplated by the Agreement was $8.925 million. (Agreement at 8, § 2(c)(vii)).

[3] On December 31, 2012, Menezes assigned all of his interest in Print3d to Barranco. (Doc. No. 71-3). The assignment agreement states that "Menezes hereby transfers, grants, conveys, assigns and relinquishes exclusively to Barranco all of Menezes' rights, title and interest in . . . the capital stock he owns in [Print3D] or in any other interest he may have in or with [Print3d]." (Doc. No. 71-3).

[4] Consequently, Menezes is not a party to this action.

On August 23, 2013, Barranco filed a complaint against 3D Systems in the U.S. District Court for the District of Hawaii seeking to recover the earn-out payments to which he believed he was entitled under the Agreement. (Doc. No. 1). The Hawaii court transferred the case to this Court in April 2014, and it was stayed pending arbitration. (Doc. Nos. 42, 47). On October 29, 2014, Barranco filed a demand for arbitration with the American Arbitration Association ("AAA"). Thereafter, an arbitrator held a five-day hearing in Charlotte from June 22–26, 2015. (Doc. No. 65-2 at 2). After post-hearing briefing, the Arbitrator issued the Award on September 28, 2015, (the "Original Award"), which consisted of seventeen single-spaced pages explaining his findings and conclusions in great detail. (Doc. No. 65-3). On September 30, 2015, 3D Systems filed a Request for Modification pursuant to AAA Rule 50 to correct alleged computational errors in the Original Award. (Doc. No. 71-13). The Arbitrator denied 3D's Request on October 16, 2015. (Doc. No. 71-12). After quoting Rule 50 and emphasizing its restraints on his power, the Arbitrator rejected 3D's Rule 50 Request "in toto" because he concluded that 3D's arguments were beyond the scope of Rule 50 and that there was no "basis in [3D's] Request that constitutes the correction of a 'clerical, typographical, or computational' error." (Id. at 2–3). The Arbitrator noted, however, that "as a result of [3D's] Request, [he had] identified several revisions needed to clarify and correct the Award." (Id. at 2). Therefore, the Arbitrator "sua sponte" issued the "Modified Award" to correct "several discrepancies" on October 16, 2015. (Doc. Nos. 65-2, 71-12).

In both the Original and Modified Awards (collectively, the "Awards"), the Arbitrator found that 3D Systems was liable for damages to Barranco for: (1) breach of contract for failing to employ Barranco as a "Manager;" (2) breach of contract for failing to maintain Print3D as a separate business unit and a "going concern;" (3) breach of the "implied requirement for best

efforts;" and (4) breach of the "implied covenant of good faith and fair dealing." (Doc. No. 65-2 at 6–14). During arbitration, both parties submitted evidence on the amount of damages. The Arbitrator found Barranco's damages calculations to be the most accurate and made the damages award based upon Barranco's evidence. Therefore, the Arbitrator found in favor of Barranco and awarded him $11,281,681.46.[5] (Doc. Nos. 65-2, 65-3).

Barranco filed his Motion to Confirm Arbitration Award in this Court on November 4, 2015. (Doc. No. 58). 3D Systems responded by filing its Motion to Vacate or Modify Arbitration Award on November 20, 2015. (Doc. No. 64). The Court heard oral arguments on the Motions on June 29, 2016, and at the Court's direction, the parties submitted supplemental briefings on July 11, 2016. (Doc. Nos. 75, 76). The motions are ripe for adjudication.

## II. STANDARD OF REVIEW

Review of an arbitrator's award is "severely circumscribed," such that it is "among the narrowest known at law." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998). "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). "As long as the arbitrator is even arguably construing or applying the contract[,] a court may not vacate the arbitrator's judgment." Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991). This is so because "to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."

---

[5] This amount is comprised of $7,253,820.00 in actual damages, $2,861,667.04 in fees and expenses, and $1,709,911.16 in prejudgment interest at 9%; less $543,716.74, which represents the portion of fees and expenses for which Barranco is responsible under the Agreement.

MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 857 (4th Cir. 2010).

Consequently, "'a federal court cannot vacate an arbitral award merely because it is convinced that the [arbitrator] made the wrong call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.'" Coastal Roofing Co. v. P. Browne & Associates, 771 F. Supp. 2d 576, 585 (D.S.C. 2010) (quoting Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004)). The Supreme Court instructs that "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Assn. v. Garvey, 532 U.S. 504, 509 (2001). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, fact finding' does not provide a basis for a reviewing court to refuse to enforce the award." Id. (quoting United Paperworkers, 484 U.S. at 39).

Therefore, to prevail, a party seeking vacatur "must clear a high hurdle. It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010). The Fourth Circuit has consistently recognized that courts are entitled to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). In sum, a court may not vacate an arbitration decision based on the belief that the arbitrator committed serious error "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." United Paperworkers, 484 U.S. at 38.

The Federal Arbitration Act, 9 U.S.C. § 10(a), provides that a court may vacate an

arbitration award only on the following grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, the Fourth Circuit has recognized some common law grounds for vacating an award, which "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006). Along with vacating an arbitration award, the Court may modify or correct an arbitration award "[w]here there was an evident material miscalculation of figures . . . ." 9 U.S.C. § 11(a).

## III. DISCUSSION

The gist of 3D Systems' argument for vacatur of the Awards is that the Arbitrator exceeded his authority. Specifically, 3D argues that the Awards should be vacated because: (1) the Arbitrator exceeded his arbitral powers by basing the Awards on an issue not submitted to him; (2) the Arbitrator violated the <u>functus officio</u> doctrine by improperly issuing the Modified Award; and (3) the Arbitrator made fundamental miscalculations with respect to damages.

A. <u>Arbitrator's Authority</u>

The Arbitrator found that 3D Systems breached, among other things, Section 3(b)(vi) of the Agreement, which required 3D to employ Barranco as a manager of the Print3D division. (Doc. No. 65-2 at 7). 3D contends that this issue was never presented to the Arbitrator and that it

did not have an opportunity to argue this issue before the Arbitrator; therefore, 3D argues that the Arbitrator exceeded his authority by finding a breach of that section of the Agreement. The Court disagrees.

"An arbitrator may address issues raised both explicitly and implicitly by the contract and the arbitration demand submissions." EST, LLC v. Smith, No. 5:08-cv-32-RLV, 2011 WL 2118984, at *2 (W.D.N.C. May 24, 2011). 3D relies heavily upon Bowater Carolina Company v. Rock Hill Local Union No. 1924 to support its position. 871 F.2d 23 (4th Cir. 1989). In fact, 3D's arguments nearly mirror those made in Bowater. However, Bowater is distinguishable from this case. In Bowater, the parties "did not discuss any issues except the narrow ones relating to the possible violation and remedy under [a specific section of the agreement] . . . . There thus was nothing in the conduct of the parties from which it could be implied that the parties agreed to arbitrate an issue other than the narrow one identified by the arbitrator." Id. at 26. In this case, however, the parties fully discussed and argued the issue before the Arbitrator. It appears to the Court that this case is more analogous to International Chemical Workers Union, Local No. 566 v. Mobay Chemical Corporation, in which the Fourth Circuit stated "the agreement to arbitrate particular issues need not be express. It may be implied or established by the conduct of the parties." 755 F.2d 1107, 1110 (4th Cir. 1985). In Mobay, the Fourth Circuit held that the parties "broaden[ed] the issue for arbitration by submitting evidence that was irrelevant to the original issue." Bowater, 871 F.2d at 25–26 (citing Mobay, 755 F.2d at 1110–12). Similarly, although the particular issue of a breach of Section 3(b)(vi) may not have been expressly submitted to the Arbitrator, the conduct of the parties in this case established that the issue was in play.

The Arbitrator had the authority to determine the scope of the issues before him, and that interpretation is entitled to deference. See Volvo GM Heavy Truck Corp. v. Int'l Union, United

Auto., Aerospace & Agr. Implement Workers of Am., No. 89-1515, 1990 WL 136644, at *2 (4th Cir. Sept. 24, 1990) ("The arbitrator's interpretation of the scope of the issues submitted is entitled to the same great deference as is accorded his interpretation of the collective bargaining agreement."). The issues surrounding Section 3(b)(vi) were fully presented and litigated before the Arbitrator,[6] and the Arbitrator clearly determined that they fell within the scope of the issues before him. Consequently, the Court finds that the Arbitrator did not exceed his authority, and the Modified Award should be confirmed.

B. Functus Officio Doctrine

3d Systems argues next that the Modified Award should be vacated because it violates the functus officio doctrine. Specifically, 3D argues that the Arbitrator exceeded his power when he sua sponte issued the Modified Award because he substantively changed two merits findings pertaining to damages. (Doc. No. 65 at 15–19).

AAA Rule 50 reads: "any party . . . may request the arbitrator . . . to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided." This rule creates the doctrine of functus officio, which prevents an arbitrator from reexamining the merits of a final award. See AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd., 404 F. App'x 793, 799 (4th Cir. 2010). The doctrine "prevents an arbitrator from reexamining the merits of a final award," id., and

---

[6] The Court rejects 3D's argument that it was not afforded an opportunity to present its side of the issue. For example, 3D states in its brief: "[The defense that Section 3(b)(vi) had been satisfied] is a specific defense that 3D Systems could have asserted before the Arbitrator in the first instance had it known of a need to do so." (Doc. No. 72 at 14 n.12). Yet, the Arbitrator stated the following, which clearly indicates 3D asserted this defense: "Thus it is clear to the Arbitrator that Mr. Barranco was not a manager. . . . [3D's] vigorous and sometimes vitriolic defense [to the contrary] rings hollow and fails. They contend that once Mr. Barranco was 'employed' as a manager under Section 3(b)(vi), this condition was satisfied as of the closing of the Agreement. The Arbitrator rejects this as circular reasoning." (Doc. No. 65-2 at 9).

it "is intended to prevent an arbitrator from changing his ruling due to outside influence," Martel v. Ensco Offshore Co., 449 F. App'x 351, 355 (5th Cir. 2011).

An award should be vacated pursuant to functus officio when the arbitrator "substantively changed and revised his decision's analysis and ruling entirely." Int'l Bhd. of Elec. Workers, Local Union 824 v. Verizon Fla., LLC, 803 F.3d 1241, 1250 (11th Cir. 2015). As 3D Systems points out, courts "tend to differentiate between a second award which is fundamentally inconsistent with the first award and one which simply flesh[es] out the remedy announced initially." Wakeman v. Aqua2 Acquisition, Inc., No. 10-4538, 2011 WL 666028, at *4 (D. Minn. Feb. 14, 2011). Amended awards that merely flesh out the remedy previously announced have consistently been found to be proper and not violative of functus officio. Id.; see also Martel, 449 F. App'x at 354 (holding that arbitrator did not violate functus officio when he issued amended award correcting error in the damage amount, which changed the damage award from $300k to $3 million). Furthermore, there are exceptions to the doctrine that allow an arbitrator to "(1) correct a mistake which is apparent on the face of his award; (2) decide an issue which has been submitted but which has not been completely adjudicated by the original award; or (3) clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation." Martel, 449 F. App'x at 354.

In this case, 3D Systems made a Request for Modification pursuant to Rule 50. The Arbitrator considered the Request and rejected it because he concluded that 3D's arguments were beyond the scope of Rule 50 and he did "not find any basis in [3D's] Request that constitutes the correction of a 'clerical, typographical, or computational' error." (Doc. No. 71-12 at 2–3). The Arbitrator quoted Rule 50 in the ruling and emphasized that he "is not empowered to redetermine the merits of any claim already decided." (Id. at 2). He noted, however, that he had "identified

several revisions needed to clarify and correct the Award." (Id.). Therefore, the Arbitrator issued the Modified Award to correct the discrepancies he had identified.

An arbitrator's interpretation of the AAA Rules is entitled to the same deference as his interpretations of the merits of the case. See Dockser v. Schwartzberg, 433 F.3d 421, 424 (4th Cir. 2006) ("Rule R-53 further provides that the rules should be 'interpreted and applied' by an arbitrator or by the AAA itself."). The Arbitrator here determined that issuing the Modified Award was permissible under Rule 50, and the Court finds that the changes made in the Modified Award were permissible clarifications. The Arbitrator did not revisit the merits of his decision, change any of his findings or substantive rulings, or alter the Award in any substantive way. The deletion of the contested language did not alter the Arbitrator's substantive findings, and it did not change the damages award. It is clear from both the Original and Modified Award that the Arbitrator meant for Barranco to be awarded the entire amount of the damages award. The Modified Award did not change or revise the Arbitrator's "analysis or ruling entirely." Verizon, 803 F.3d at 1250. It simply fleshed out the remedy initially announced. Therefore, the Court finds that the functus officio doctrine was not violated, and the Modified Award should be confirmed.

C. Damages Award

Finally, 3D argues that both Awards should be vacated because the evidence of damages was too speculative and conjectural to warrant an award and the attorneys' fee award failed to conform to the Agreement.

When a plaintiff in a contract action has suffered some injury, as the Arbitrator found here, "recovery will not necessarily be denied a plaintiff when it is apparent that the quantum of damage is unavoidably uncertain, beset by complexity or difficult to ascertain." Berley Indus., Inc. v. City

of New York, 385 N.E.2d 281, 283 (N.Y. 1978).[7]  Both sides in this case presented evidence regarding damages.  The Arbitrator considered the evidence and found that 3D's damages evidence was "self-serving and difficult to believe."  (Doc. No. 65-2 at 15).  He further found that Barranco's measure of damages was "within the contemplation of the parties at the time the contract was made."  (Id. at 15).  The Arbitrator thoroughly explained his findings and cited appropriate New York case law supporting them.  Accordingly, the Court finds that the Arbitrator did his job and did not exceed his authority in determining the damages award.  Mountaineer Gas Co., 76 F.3d at 608.

In sum, the Court finds that the Arbitrator did not exceed his authority; violate the functus officio doctrine; or miscalculate the damages and fee award.  Accordingly, in light of the deferential standard of review applied to arbitration awards, Apex Plumbing Supply, Inc., 142 F.3d at 193, the Court will confirm the Modified Award.

Plaintiff also petitions the Court to award costs, fees, and attorneys' fees.  (Doc. No. 58 at 3).  N.C. Gen. Stat. § 1-569.25 provides that "[a] court may allow reasonable costs of the motion and subsequent judicial proceedings."  Plaintiff has provided no facts, case law, or arguments to support the position that the Court should exercise its discretion to award costs or attorneys' fees in the matter, and the Court finds no reason to do so.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Confirm Arbitration Award and for Judgment, (Doc. No. 58), is **GRANTED in part and DENIED in part**.  Specifically, the Modified Award is **CONFIRMED**, and the Court hereby enters judgment in favor of Plaintiff and against

---

[7] Under the Agreement, New York law governs. (Agreement at 26, § 10(f)).

Defendants, jointly and severally, in the principal amount of $11,281,681.46 as set forth in the Modified Award, plus interest as allowed by applicable law. However, the Court **DENIES** Plaintiff's motion for costs and fees.

2. 3D Systems' Motion to Vacate or Modify Arbitration Award, (Doc. No. 64), is **DENIED**.
3. The Clerk of Court is respectfully directed to enter the judgment and close this case.

Signed: August 31, 2016

*[Signature]*

Robert J. Conrad, Jr.
United States District Judge